UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED

2005 JAN 19 P 3:31

U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Action No.:

RECEIPT #
AMOUNT 150
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK
DATE 1-19-05

FRANK LILL & SON, INC.,                    )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )
                                           )
MEDICAL AREA TOTAL ENERGY                  )
PLANT, INC.,                               )
            Defendant.                     )

# 05 · 10122 RGS

## COMPLAINT

MAGISTRATE JUDGE _Alexander_

Plaintiff, Frank Lill & Son, Inc. states and alleges as follows:

### PARTIES

1.   Plaintiff, Frank Lill & Son, Inc. ("Lill") is a New York corporation with its principal place of business at 656 Basket Road, Webster, New York.

2.   Upon information and belief, Defendant Medical Area Total Energy Plant, Inc. ("MATEP") was and is a Massachusetts corporation with a place of business at 474 Brookline Avenue, Boston, Massachusetts.

### JURISDICTION AND VENUE

3.   This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332.

The amount in controversy exceeds $75,000.00.

4.    Venue is appropriate under 28 U.S.C. §1391 as this is the judicial district in which the sole defendant resides.

BACKGROUND

5.    This matter arises from work performed by Lill for MATEP on a project designated by MATEP as the Installation of Phase 3 Piping Systems at the MATEP facility in Boston, Massachusetts ("the Project").

6.    On or about March 27, 2003, Lill entered into an agreement ("Contract") with MATEP under which Lill agreed to provide installation of specified materials in relation to the Project and MATEP agreed to pay Lill the sum of $2,050,000.00. A copy of the Contract is annexed hereto as Exhibit "A" and made a part hereof.

7.    The Contract price of $2,050,000.00 did not include changes or additions to the Contract, or extra or additional work performed by Lill.

8.    Under the Contract, Lill's work consisted of removal of Steam Blow Piping, hydrotesting of HRSG Boiler Assembly, rework and installation of ERI supplied piping, and the installation of the following: Turbine Vents and Drains; Turbine Lube Oil System; HPS System; Boiler Feed Water System; Fuel Oil System; Vents, Drains and Blow Down Piping; Demineralized Water System; Safety Vent Piping; Compressed Air Header; Chemical Feed

2

System; Cooling Water System; Steam Blow Piping; Low Pressure Gas System; High Pressure Gas System; Urea/Ammonia System; and Glycol Cooling System.

9. All of Lill's Contract work was to be performed under Phase III of the Project. Lill's Contract did not include work in relation to Phases I and II of the Project.

10. The contractors who did perform work in Phases I and II of the Project were supposed to have their work completed prior to Lill's scheduled start date in March 2003. To the extent that Phase II contractors were not completed in March 2003, MATEP represented to Lill that this work would be completed shortly thereafter and would not interfere with the orderly progression of Lill's Contract work.

11. Subsequent to MATEP's award of the Contract to Lill, but prior to Lill's commencement of the work on March 26, 2003, numerous modifications were made in the original bid drawings impacting piping and hangers to be furnished and installed by Lill.

12. At the same time, Lill discovered that the ERI-supplied piping required re-fabrication which was not represented in the bid documents, thus necessitating a change order.

3

13. As early as April 3, 2003, Lill notified MATEP, in writing, that the changes and modifications to the bid documents were impacting the original contract schedule.

14. On April 7, 2003, MATEP transmitted a letter to Lill referencing 20 additional revised drawings which Lill was directed to include in its scope of work and requesting that Lill now include Compressed Air and Instrument Air Headers in its scope of work. Lill was directed to provide MATEP with pricing for these changes by April 11, 2003.

15. Changes and modifications to the Contract work, such as those encountered by Lill at the commencement of its work in April 2003, continued throughout the course of the entire Project.

16. In fact, MATEP continued to issue change orders to Lill after the scheduled Project completion date of August 20, 2003.

17. As of mid-May 2003, it was apparent to Lill that the Project was being encumbered with change order requests, specification and design changes, pipe routing changes, on-the-fly hanger changes, valve additions and in excess of 40 outstanding requests for information ("RFI's"). The quantity, nature and timing of these items was seriously impeding Lill's construction progress and efficiency.

4

18.  By letter dated May 16, 2003, Lill advised MATEP of
the foregoing issues and suggested to MATEP that it would be
advantageous to both parties if the Contract was converted to a
time and materials contract. MATEP declined Lill's offer to
convert the Contract to a time and materials contract.

19.  Between April 3, 2003 and May 5, 2004, Lill submitted
to MATEP, and MATEP approved, 137 change orders (known on the
Project as "Work Authorizations" or "WA's") totaling
$1,726,110.00.

20.  The total value of the approved and paid WA's on the
Project brought the Contract value to one hundred, eighty-four
per cent (184%) of the original Contract price.

21.  Through the WA's, MATEP authorized Lill to perform
nearly as much changed or extra work as original Contract work
on the Project.

22.  Lill did not, and could not, foresee the magnitude of
the change order work required by MATEP to complete the Project.

23.  The excessive quantity of change orders on the
Project, as well as the amount of work encompassed by these
change orders, negatively impacted Lill's work productivity on
the Project and caused Lill to incur costs that were not
compensated in the 137 processed change orders.

24.  The excessive quantity of change orders on the
Project, as well as the amount of work encompassed by these

5

change orders, required Lill to accelerate its Contract work, as
MATEP failed to provide Lill with sufficient time extensions to
the Project schedule to complete the quantity of new work in the
processed change orders.

25.  In addition to the change order work performed by
Lill, and approved and paid for by MATEP, Lill performed other
work on the Project that was not encompassed by its Contract,
for which Lill is entitled to change orders which MATEP refuses
to authorize and pay ("the Disputed Extra Work Items").

26.  The Disputed Extra Work Items include re-work of the
ammonia decomposition skid flanges; installation of low pressure
gas piping suction line to gas compressors; relocation of low
pressure gas piping PRV and insulation; ultrasonic testing and
non-destructive examination of high pressure gas piping;
additional steam blow work; additional premium time labor;
unplugging of Boiler #1 superheater drain; purging of the low
pressure gas piping main header; and uncompensated site
manager/supervisor expenses for approved change order work.

27.  Lill has attempted to resolve its disputes referenced
herein with MATEP pursuant to Article 13 ("Disputes") of the
Contract.

28.  Lill has satisfied any conditions precedent to the
commencement of this action against MATEP.

29.  Lill has not waived the claims alleged herein.

6

## COUNT I
## BREACH OF CONTRACT
### (Disputed Extra Work Items)

30.  Each of the foregoing paragraphs are re-alleged and re-asserted as if set forth fully herein.

31.  Lill has duly performed its work and otherwise satisfied all of its obligations to MATEP under the Contract.

32.  At the specific request and direction of MATEP, Lill performed the Disputed Extra Work Items on the Project.

33.  The Disputed Extra Work Items constitute extra work, outside of the original scope of Lill's Contract work.

34.  MATEP has failed and refused to pay Lill for the Disputed Extra Work Items, despite Lill's repeated requests for said payment.

35.  MATEP's failure and refusal to make payment to Lill for the Disputed Extra Work Items is a material breach of Contract.

36.  By reason of the foregoing, Lill has been damaged in the amount of $277,349.86, plus interest.

37.  By reason of the foregoing, MATEP is liable to Lill for damages totaling $277,349.86, plus interest.

## COUNT II
## UNJUST ENRICHMENT
### (Disputed Extra Work Items)

38.  Each of the foregoing paragraphs are re-alleged and re-asserted as if set forth fully herein.

39.  Lill fully performed the Disputed Extra Work Items.

40.  MATEP accepted, without objection, the work, as well
as the benefits flowing from said work.

41.  By reason of the acts of MATEP, as set forth herein,
and without any wrongdoing on the part of Lill, MATEP has been
unjustly enriched to the detriment of Lill.

42.  By reason of the foregoing, Lill has been damaged in
the amount of $277,349.86, plus interest.

43.  By reason of the foregoing, MATEP is liable to Lill
for damages totaling $277,349.86, plus interest.

## COUNT III
## QUANTUM MERUIT
### (Disputed Extra Work Items)

44.  Each of the foregoing paragraphs are re-alleged and
re-asserted as if set forth fully herein.

45.  By reason of the foregoing, Lill is entitled to
recover in *quantum meruit* from MATEP.

46.  By reason of the foregoing, Lill has been damaged in
the amount of $277,349.86, plus interest.

47.  By reason of the foregoing, MATEP is liable to Lill
for damages totaling $277,349.86, plus interest.

## COUNT IV
## BREACH OF CONTRACT
### (Cumulative Work of the 137 Work Authorizations)

48.  Each of the foregoing paragraphs are re-alleged and
re-asserted as if set forth fully herein.

8

49.  Lill performed work on the Project pursuant to 137 WA's issued by MATEP.

50.  Many of the WA's encompassed multiple changes to the work and responses to multiple RFI's.

51.  The cumulative work of the 137 WA's was not fairly and reasonably within the contemplation of the parties at the time they entered the Contract.

52.  The number, magnitude, quality, and character of the 137 WA's issued by MATEP impacted the complexity of the construction process of Lill's Contract work and the unchanged Contract work, as well as the duration of the Project.

53.  The 137 WA's issued by MATEP significantly changed the magnitude of work to be performed by Lill.

54.  The 137 WA's issued by MATEP drastically altered quality and character of the work contemplated by Lill's original Contract.

55.  The 137 WA's issued by MATEP resulted in a near doubling of the original Contract price.

56.  The cumulative work of the 137 WA's issued by MATEP constitutes changes outside the general scope of Lill's Contract.

57.  The cumulative work of the 137 WA's constitutes a cardinal change and abandonment by MATEP of the Contract.

58. The cumulative work of the 137 WA's issued by MATEP constitutes a material breach of the contract by MATEP.

59. By reason of the foregoing, Lill has been damaged in the amount of $912,404.98, plus interest.

60. By reason of the foregoing, MATEP is liable to Lill for damages totaling $912,404.98, plus interest.

## COUNT V
## QUANTUM MERUIT
### (Cumulative work of the 137 Work Authorizations)

61. Each of the foregoing paragraphs are re-alleged and re-asserted as if set forth fully herein.

62. By reason of the foregoing, Lill is entitled to recover in *quantum meruit* from MATEP.

63. By reason of the foregoing, Lill has been damaged in the amount of $912,404.98, plus interest.

64. By reason of the foregoing, MATEP is liable to Lill in the amount of $912,404.98.

WHEREFORE, it is respectfully requested that Lill be granted judgment as follows:

A. On the First Count against MATEP in the amount of $277,349.86, plus interest;

B. On the Second Count against MATEP in the amount of $277,349.86, plus interest;

10

C.   On the Third Count against MATEP in the amount of $277,349.86, plus interest;

D.   On the Fourth Count against MATEP in the amount of $912,404.98, plus interest;

E.   On the Fifth Count against MATEP in the amount of $912,404.98, plus interest;

F.   Together with such other and further relief as the Court deems just and proper.

## JURY DEMAND

Lill demands a jury trial on all Counts of its Complaint.

                              Respectfully submitted,
                              FRANK LILL & SON, INC.,
                              By its attorneys,


                              John J. McNamara
                              BBO #557882
                              Leonard D. Zamansky
                              BBO #630206
                              Domestico, Lane & McNamara, LLP
                              161 Worcester Road
                              Framingham, MA   01701
                              (508) 626-9000


Dated:   January 19, 2005

11

**A**

**Combustion Turbine Project**
Phase 3 Piping Systems Construction Contract

# CONSTRUCTION CONTRACT # P.C.#1389

## For

## Phase 3 Piping System Installations



RECEIVED

APR 1 6 2003

FRANK LILL & SON INC.

## BETWEEN

## Medical Area Total Energy Plant, Inc. ("MATEP")

## AND

## Frank Lill and Son, Inc

## AWARDED:

## March 21, 2003

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

# TABLE OF CONTENTS

ARTICLE 1.0 PROJECT DESCRIPTION ..................................................................... 6

ARTICLE 2.0 MATEP'S RESPONSIBILITIES ............................................................. 6
2.1 Delivery Location ..................................................................................... 6
2.2 MATEP's Representative ........................................................................... 6
2.3 Project Construction Services ................................................................... 6
2.4 Taxes ......................................................................................................... 7
2.5 Plant Operations ....................................................................................... 7
2.6 Pay Contractor .......................................................................................... 7

ARTICLE 3.0 CONTRACTOR'S RESPONSIBILITIES .............................................. 7
3.1 Priority of MATEP Operations ................................................................ 7
3.2 Responsibility for Subcontractors and Agents ........................................ 7
3.3 Scope of the Work/ Project Requirements ............................................... 7
3.4 Standard of Performance .......................................................................... 7
3.5 MATEP Right to Reject ............................................................................ 8
3.6 Project Manager ........................................................................................ 8
3.7 Hazardous Wastes or Materials ............................................................... 8
3.8 Liens ......................................................................................................... 8
3.9 Publicity ................................................................................................... 8
3.10 Asset Records .......................................................................................... 9
3.11 Contractor's Commitments Related to Schedule ..................................... 9
3.12 Reserved .................................................................................................... 9
3.13 Bonds ....................................................................................................... 9
3.14 Site Housekeeping .................................................................................. 10
3.15 Osha Hazard Communications ............................................................... 10
3.16 Responsibility for Equipment and Materials Furnished by MATEP ...... 10
3.17 Division and Coordination of the Work ................................................. 10
3.18 Authorization To Do Business ............................................................... 11
3.19 Recordkeeping ....................................................................................... 11
3.20 Union Contractors and Workers ............................................................ 11

ARTICLE 4.0 WARRANTY .................................................................................... 11
4.1 Warranties ............................................................................................... 11
4.2 Remedies ................................................................................................. 11
4.3 Warranty of Title .................................................................................... 11
4.4 Warranty of Intellectual Property Rights ............................................... 11
4.5 Manufacturer's Warranty ....................................................................... 12
4.6 Exceptions to Warranty .......................................................................... 12
4.6 Exclusivity of Warranty ......................................................................... 12

ARTICLE 5.0 CONTRACTOR COMPENSATION ................................................... 12

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

5.1 Contract Price................................................................................................................12

ARTICLE 6.0 INVOICING AND PAYMENTS.......................................................... 12
6.1 Payments to Contractor.....................................................................................12
6.2 Retention/Payments Withheld .........................................................................12

ARTICLE 7.0 DEFAULT AND TERMINATION .................................................... 13
7.1 Contractor Default .............................................................................................13
7.2 MATEP's Default Remedies Against Contractor.........................................13
7.3 Termination by MATEP Without Contractor Default ................................13

ARTICLE 8.0 INSURANCE...................................................................................... 14
8.1 Contractor's Obligation ....................................................................................14

ARTICLE 9.0 TITLE AND RISK OF LOSS ............................................................ 15
9.1 Provision of Clear Title.....................................................................................15

ARTICLE 10.0   INDEMNIFICATION ................................................................... 15
10.1 MATEP's Indemnification Obligation...........................................................15
10.2 Contractor's Indemnification Obligation......................................................15
10.3 Tax Indemnity ...................................................................................................16
10.4 No Indemnity Of Party At Fault.....................................................................16
10.5 Conditions ..........................................................................................................16
10.6 Confidentiality ..................................................................................................16

ARTICLE 11. INTELLECTUAL PROPERTY RIGHTS......................................... 17
11.1 Patent and License Rights ...............................................................................17

ARTICLE 12.0   ASSIGNMENT ............................................................................... 17
12.1 Assignment .........................................................................................................17

ARTICLE 13.0   DISPUTES ....................................................................................... 17
13.1 Governing Law ...................................................................................................17
13.2 Dispute Resolution............................................................................................17

ARTICLE 14.0   REPRESENTATIONS AND WARRANTIES............................... 17
14.1 By Contractor .....................................................................................................17
14.2 By MATEP ...........................................................................................................18

ARTICLE 15.0   NOTICES/COMMUNICATIONS.................................................. 19
15.1 Notices .................................................................................................................19
15.2 Effect of Notices ................................................................................................20
15.3 Technical Communications .............................................................................20

ARTICLE 16.0   MISCELLANEOUS ........................................................................ 20
16.1 Independent Contractor....................................................................................20
16.2 Effect of Invalid Provisions ............................................................................21

April 1, 2003
Revision 3

# Combustion Turbine Project

## Phase 3 Piping Systems Construction Contract

16.3 Order of Precedence ................................................................21
16.4 Survival ................................................................21
16.5 Entire Contract ................................................................21
16.6 Modification in Writing ................................................................21
16.7 Continuing Obligations ................................................................21
16.8 Headings ................................................................21
16.9 Time of Performance ................................................................22
16.10 No Waiver ................................................................23

ARTICLE 17.0  LIMITATIONS ................................................................23
17.1 General Limitations ................................................................23

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

# ATTACHMENTS

I.    DEFINITIONS
II.   EXHIBITS

**Exhibit A. Change Order Procedure**

**Exhibit B. Milestone Schedule Dates & Values**

**Exhibit C. Work Scope**

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

CONTRACT FOR

## Installation of Phase 3 Piping Systems

This Contract is made and entered into as of the 27th day of March, 2003, by and between Medical Area Total Energy Plant, Inc. ("MATEP"), a Massachusetts corporation and Frank Lill and Son, Inc, a New York corporation for the installation of specified materials at MATEP's facility located on 474 Brookline Avenue, Boston, MA 02215.

## RECITALS

WHEREAS, MATEP desires to procure certain Materials & Labor (which is more specifically described in the Work Scope, Exhibit C herein) associated with the upgrade of its generating facilities and;

WHEREAS, Contractor desires to provide such Material and related Installation Labor

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound, the parties hereto agree as follows:

### ARTICLE 1.0      PROJECT DESCRIPTION

In accordance with the terms hereof, Contractor shall provide and install the specified equipment and materials. Delivery of contractor provided equipment or materials shall be F.O.B. the Site or as directed by MATEP.

### ARTICLE 2.0     MATEP'S RESPONSIBILITIES

**2.1    Delivery Location**

MATEP shall provide access for the deliveries of the Contractor. Contractor shall be responsible for delivery, receiving and unloading at the location(s) designated by MATEP. Contractor shall accept, as a back charge against this Lump Sum Contract Price, any costs incurred by MATEP for receiving and/or unloading the contractor's deliveries in the Contractor's absence.

**2.2    MATEP's Representative**

MATEP shall designate and identify MATEP's Representative, who shall act as Contractor's primary point of contact with MATEP with respect to the execution of the Work.

**2.3    Project Construction Services**

MATEP, through its own resources and those of its contractors, shall be responsible for general engineering and construction services associated with the Project.

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

### 2.4  Taxes

MATEP shall furnish to Contractor a certificate complying with applicable Governmental Rules to the extent that supplied Material is considered exempt from sales and use taxes.

### 2.5  Plant Operations

MATEP shall be responsible for Plant operations during the Project.

### 2.6  Pay Contractor

MATEP shall make monthly payments to the Contractor as set forth in a Payment Schedule, based on the total dollar value for each of the Milestone Activities. A dollar value will be established for a monthly summary invoice, which will be composed from the negotiated monthly percentage of completion of each of those activities.

## ARTICLE 3.0    CONTRACTOR'S RESPONSIBILITIES

### 3.1  Priority of MATEP Operations

The work at all times shall be coordinated and shall not interfere with the operation of the Plant.

### 3.2  Responsibility for Subcontractors and Agents

Contractor may subcontract portions of the Work to persons and firms subject to the prior written approval of MATEP. Notwithstanding any agreement with any subcontractor, Contractor shall be solely responsible for the Work, and shall not be entitled to relief due to the performance or non-performance of its subcontractors. In the event of any subcontract relationship, Contractor shall be responsible to assure that its subcontractor complies with all obligations imposed on Contractor hereunder with respect to the Work.

### 3.3  Scope of the Work/ Project Requirements

Contractor shall perform all Work specified in the Bid Package contents sheet. Contractor has inspected the Site and surrounding areas for access and constructability, reviewed the Work Scope Requirements and represents and warrants that the Installation shall satisfy such Requirements.

#### 3.3.1  Contractor Authorized Access

Contractor and AES / MATEP shall agree upon a specific entrance to the Site to be used by Contractor for ingress and egress of all personnel, equipment, vehicles and materials, material laydown areas and emergency access/egress in or out of site, or to emergency equipment. Parking areas and security measures shall also be agreed upon. Contractor acknowledges there is no on-site parking available.

### 3.4  Standard of Performance

Contractor shall satisfy its obligations in accordance with the terms and conditions of this Contract, the Milestone Schedule, and the Work Scope while complying with all Governmental

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

Rules or Approvals and utilizing methods or tools that are currently accepted as good construction and prudent engineering practices. The material shall be free from defects, shall conform to the standard of material and workmanship prevailing in the industry, shall be designed to adequately perform the function for which such material was specified, and shall conform in all respects to the Work Scope, the detailed design and engineering Work and the terms of this Contract. All Materials and/or Labor supplied under this Contract shall be new and of good quality.

### 3.5    MATEP Right to Reject

MATEP shall have the right to reject any Material or related facilities or services that do not meet the requirements of this Contract. Upon such rejection Contractor shall remedy, at its sole cost and expense, all conditions giving rise to such a rejection and provide evidence to MATEP that the remedy is complete.

### 3.6    Project Manager

Contractor shall identify to MATEP a Project Manager who shall;
- i)    have full responsibility for the Work
- ii)    act as MATEP's primary point of contact with Contractor with respect to execution of the Work
- iii)    be available to meet with MATEP, as reasonably requested by MATEP, to discuss the Work or any issue related thereto.

### 3.7    Hazardous Wastes or Materials

MATEP, at its Contractor's expense, shall remove, transport and dispose of all Hazardous Wastes or Materials transported to, created on, or released onto or from the Site by Contractor or created or used as part of contractor's activities at the Site. MATEP shall be responsible for the management and/or removal and all impact of any pre-existing Hazardous Wastes or Materials.

### 3.8    Liens

Contractor shall not permit any Lien to be imposed on the Project, the Site, the Materials or the Work, except for such Liens applied by Contractor for non-payment of any amount due from MATEP under this Agreement. Contractor shall take prompt steps to discharge any lien filed in connection therewith. Contractor shall indemnify and hold harmless MATEP from, and defend MATEP against, any and all such other liens.

### 3.9    Publicity

Contractor shall obtain the prior written approval of MATEP of the content of any external announcement, publication, or other type of public communication concerning this Contract or the Project prior to the release of the same. Contractor shall not place any signs at the Site unless permitted by MATEP.

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

### 3.10    Asset Records

When requested, Contractor shall furnish to MATEP information such as lists of all equipment make, model and serial numbers, and instrument indices for MATEP to establish and maintain fixed asset records.

### 3.11    Contractor's Commitments Related to Schedule

Contractor guarantees that the installations shall be completed on ore before the date or dates as specified in the Milestone Schedule Dates, Exhibit B. Contractor also agrees that time is of the essence with respect to Contractor's obligations to achieve Milestones on a timely basis; the foregoing shall not be construed to limit MATEP's obligation to make Milestone payments for Milestones achieved by Contractor.



### 3.11.1  Liquidated Damages

Contractor understands that if the installation of the Equipment and Material, which satisfies the requirements of this Contract, is not achieved by the pertinent Milestone Date(s) MATEP will suffer substantial damages. Therefore, Contractor agrees that for each day of delay Contractor shall pay to MATEP as liquidated damages and not as a penalty, the sum of $700 per Day until the date such Milestone Date obligation is completely satisfied. The liquidated damages set forth herein shall be MATEP's sole remedy and Contractor's sole liability with respect to a delay as to which Contractor pays liquidated damages. The maximum amount of liquidated damages that Contractor may incur in the event of late delivery shall not exceed 10% of the Contract Price. MATEP reserves all rights and remedies with respect to any delay as to which Contractor has not paid liquidated damages.

### 3.12    Reserved

### 3.13    Bonds

### 3.13.1  Performance Bond

The Contractor shall deliver to MATEP (to be paid by MATEP under a separate invoice) a Performance Bond or Bonds with a penalty equal to the Total Contract Price, with both surety and form satisfactory to MATEP and payable to MATEP, its successors and assigns; conditioned that the Contractor shall perform faithfully, promptly, and with due diligence all the covenants and agreements on the part of the Contractor contained in this Contract, which bond shall remain in effect from the date of the Contract until one year following final written acceptance of the Work.

### 3.13.2  Scope of Any Bond

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

Any Bond or Bonds shall automatically cover all alterations, extension, and additions to this Contract and any extra or additional work done, all without the specific consent of or notice to the Surety.

### 3.14    Site Housekeeping

The Contractor shall at all times keep the work site free from accumulations of waste material or rubbish caused by Contractor.

### 3.15    OSHA Hazard Communication Standard

A Contractor, prior to bringing hazardous chemicals on to the Site and/or arranging for their transportation to an MATEP facility, shall obtain prior approval from MATEP management prior to bringing such hazardous chemicals on site, and provide the required MSDS for those items. The Contractor is hereby notified that MATEP has in place a Hazard Communication Program in accordance with 29 CFR 1910.1200. This document is available for review and inspection by the Contractor or his representative.

The Contractor hereby explicitly states and agrees that he is cognizant of and will comply with any and all Federal and/or State laws or regulations relating to hazardous materials, including but not limited to the OSHA Hazard Communication Standard.

Contractor agrees to indemnify and hold harmless MATEP for any and all claims, demands or causes of action of any kind which may result from Contractor's failure to comply with applicable laws and regulations. This provision shall survive the termination of this Contract.

### 3.16    Responsibility for Equipment and Materials Furnished by MATEP

The Contractor shall examine all equipment and materials supplied by MATEP prior to acceptance. If such equipment and material are accepted or used by the Contractor, the Contractor shall thereafter be responsible for the security and condition of such equipment and material. All equipment or material which is to be returned to MATEP shall be maintained properly, protected against damage and loss, and returned to MATEP in the same condition as received from MATEP, reasonable wear and tear excepted. The Contractor shall be responsible for any damage to or loss of equipment and materials from the time of delivery thereof to the Contractor until the installation is accepted by MATEP.

### 3.17    Division and Coordination of the Work

Contractor acknowledges and agrees that this Contract does not grant exclusive rights to the Contractor for the performance of the work or access to the areas associated with the Project. In such cases, Contractor shall be responsible for the complete performance of its own work, and shall coordinate all portions of its own work with that of other Contractor(s).

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

**3.18** **Authorization To Do Business**

Contractor warrants and represents that it is authorized to do business in the Commonwealth of Massachusetts, and such authorization shall be maintained throughout the Term of this contract.

**3.19** **Record keeping**

Contractor shall maintain, in accordance with generally acceptable accounting principles, accurate and complete books of account, documents and records (collectively referred to as "Records" herein) supporting the work provided under this Contract for change orders only. All Records shall be retained for a period of three (3) years after work is completed hereunder. MATEP and its authorized agents and representatives shall have access to such Records through an independent auditor jointly selected by the parties for purposes of audit during normal business hours throughout the term of these Contract Documents and for the additional three (3) year period as herein before referenced.

**3.20** **Union Contractors and Workers**

Contractor acknowledges that certain employees at the Plant are member of a labor union, and Contractor and sub-Contractor personnel (excepting management) performing work at the Site shall likewise be members of a trade or labor union.

## ARTICLE 4.0    WARRANTY

**4.1** **Warranties**

Contractor warrants that it shall perform the Work in accordance with the standards of performance set forth in this Contract. Such warranty shall extend from the date of installation through twelve months following the date of written acceptance by MATEP of the work.

**4.2** **Remedies**

Upon written notice from MATEP, Contractor shall, in a timely manner, without additional compensation, take immediate action to repair or replace any components or materials, which do not comply with any warranty. Contractor shall also be responsible for and replace or repair any damage to the Foundation caused by any warranty failure or resulting from Contractor's warranty work hereunder. If Contractor does not diligently pursue a remedy as required herein, MATEP may perform or have performed by third parties the necessary remedy and Contractor shall be liable for all reasonable direct costs (including overhead), charges and expenses (including transportation and expediting fees) incurred by MATEP in connection with such remedy.

**4.3** **Warranty of Title**

Contractor warrants that it is the owner of all right, title, and interest in the materials and Equipment provided to Owner pursuant to this Agreement.

**4.4** **Warranty of Intellectual Property Rights**

Contractor warrants that the sale or that the use of the materials, Equipment and property furnished hereunder shall not infringe upon any patent, copyright, trade secret, or other right held

# Combustion Turbine Project

## Phase 3 Piping Systems Construction Contract

by a third party. Contractor agrees to defend, at its own expense, or at its option, to settle any claim, suit, or proceeding brought against MATEP on the issue of infringement of any property right, including without limitation and title right or proprietary interest. In the event of a determination that there exists a violation of such rights, Contractor agrees at its option to (i) procure for the Company the right to continue use of such material, Equipment or property, or (ii) replace or modify the same to make it non-infringing, with equivalent functionality.

**4.5    Manufacturer's Warranty**

Contractor shall assist MATEP in the enforcement of all third party including, without limitations, manufacturer warranties.

**4.6    Exceptions to Warranty**

Contractor shall not be responsible for providing working access to the nonconforming Materials, including disassembly and re-assembly, of non-Contractor supplied equipment, or for providing transportation to or from any repair facility, all of which shall be at MATEP's risk and expense.

**4.7    Exclusivity of Warranty**

THE FOREGOING WARRANTIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES OF QUALITY AND PERFORMANCE, WHETHER WRITTEN, ORAL OR IMPLIED, AND ALL OTHER WARRANTIES INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USAGE OF TRADE ARE HEREBY DISCLAIMED. THE REMEDIES STATED HEREIN CONSTITUTE MATEP'S EXCLUSIVE REMEDIES AND CONTRACTOR'S ENTIRE LIABILITY FOR ANY BREACH OF WARRANTY.

## ARTICLE 5.0    CONTRACTOR COMPENSATION

**5.1    Contract Price**

As full compensation for the Work, MATEP shall pay Contractor the Not-to-Exceed, Lump Sum Contract Price of $ 2,050,000.00 as adjusted for any increases or decreases, as specified in a Change Order approved in accordance with Article 4.

## ARTICLE 6.0    INVOICING AND PAYMENTS

**6.1    Payments to Contractor**

For the performance of the Work, MATEP shall pay Contractor a percentage of the dollar amount set forth in Article 5 at the times and in the manner specified in this Article 6.0 and as provided in the established Payment Schedule, conditioned on monthly progress against the Milestone Activities. Payment, minus a 5% retainage, shall be due 30 Days after MATEP's receipt and approval of the contractor's monthly invoice and progress completion report.

**6.2    Retention/Payments Withheld**

MATEP may also withhold payment to the extent as may be necessary to protect MATEP from loss on account of any manner or cause arising under this Contract, including but not limited to the following:

       (a)    Defective work not remedied.

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

(b)     Claims filed or reasonable evidence indicating probable filing of claims.
(c)     Failure of the Contractor to make payments properly to the Sub-Contractors or for material, labor or equipment.
(d)     Damage to another contractor or Contractor.

Contractor shall deliver to MATEP upon request and prior to receipt of final payment evidence demonstrating the release of all liens and title claims relating to all equipment and materials provided hereunder.

## ARTICLE 7.0     DEFAULT AND TERMINATION

### 7.1     Contractor Default

The occurrence of any of the events set forth below shall constitute a Contractor Event of Default under this Contract:

7.1.1     Contractor voluntarily commences bankruptcy, insolvency, reorganization, stay, moratorium or similar debtor-relief proceedings, or shall have become insolvent or generally does not pay its debts as they become due, or admits in writing its inability to pay its debts, or makes an assignment for the benefit of creditors and such default condition is not cured within thirty (30) Days; or

7.1.2     Insolvency, receivership, reorganization, bankruptcy, or similar proceedings shall have been commenced against Contractor and such proceeding remain undismissed or unstayed for a period of thirty (30) Days; or

7.1.3     Contractor shall have defaulted in its performance under any other material provision of this Contract and shall have failed to either: (i) cure such default within ten (10) Days following delivery to Contractor of a Notice from MATEP to cure such default, or (ii) if a cure cannot reasonably be effected within such ten (10) Day period, to commence and diligently pursue the cure.

### 7.2     MATEP's Default Remedies Against Contractor

If a Contractor Event of Default shall have occurred and be continuing, MATEP shall have the right to terminate this Contract by Notice to Contractor. In addition, in the event of such termination MATEP shall receive all rights and remedies against Contractor.

### 7.3     Termination by MATEP Without Contractor Default

MATEP may terminate this Contract and the Work by issuing a written Notice of Termination to Contractor fifteen (15) days prior to date of termination. In such event:

7.3.1     If requested by MATEP, Contractor shall withdraw from the Site, and shall remove such materials, equipment, tools and instruments used and any debris or waste materials generated by Contractor in the performance of the Work as MATEP may

April 1, 2003
Revision 3

# Combustion Turbine Project

### Phase 3 Piping Systems Construction Contract

direct, and Contractor shall deliver to MATEP all designs, drawings, and Site facilities as MATEP shall have paid for or pays for upon termination.

7.3.2   Within 30 Days after MATEP notifying a Contractor of a termination pursuant to Section 16.3, MATEP shall pay Contractor for its documented, incurred, but yet unreimbursed project costs, plus a 17% markup for overhead and profit as of the date the termination notice is effective.  Such Termination Payment shall not exceed Contractor's actual costs as of the date of termination, nor shall such Payment exceed the corresponding monthly progress amount on the Contractors Payment schedule.

## ARTICLE 8.0    INSURANCE

### 8.1    Contractor's Obligation

8.1.1   Contractor Coverage's

To the extent Contractor is performing any activities at the Site (including delivery), Contractor shall procure and maintain in full force and effect the following coverage:

8.1.1.1    Comprehensive General Liability Insurance

Such insurance shall provide coverage against claims for bodily injury (including death) and property damage, shall be on an occurrence basis and shall provide coverage for products - completed operations, blanket contractual, explosion, collapse and underground coverage, broad form property damage, products and completed operations and personal injury insurance with a combined single limit of $5,000,000 each occurrence for combined bodily injury and property damage, and in the aggregate;

8.1.1.2    Comprehensive Automobile Liability

To provide coverage against liability arising out of the use of any vehicle (including all owned, leased, non-owned and hired vehicles) with limits of $5,000,000 combined single limit each accident.

8.1.1.3    Workers Compensation Insurance

As required by state laws for all employees of Contractor, including employer's liability insurance for all employees of Contractor in statutory amounts.

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

### 8.1.2   Additional Insured

Insurance carried under Section 8.1 shall, with the exception of the workers' compensation coverage part (a) insurance provided in section 8.1.3, include the MATEP, and its Affiliates, directors, officers, employees, and other parties as may be required by the MATEP as additional insured.

### 8.1.3   Waiver of Subrogation

All policies maintained by Contractor under Article 8 shall provide for a waiver of subrogation in favor of MATEP.

### 8.1.4   Insurance Policies/Certificates

Contractor shall furnish notice of the insurance required in Article 8.0, in the form of insurance certificate(s) reasonably satisfactory to MATEP.

## ARTICLE 9.0    TITLE AND RISK OF LOSS

### 9.1   Provision of Clear Title

Contractor warrants good title to all materials and supplies furnished by it, it's Sub-Contractors and shall keep the foregoing free and clear of all liens, security interests, and encumbrances; provided, however, that as to software or other items which may be subject to licenses in favor of third persons, MATEP's use and possession thereof shall be subject to said licenses. Title and risk of loss to all such materials and supplies shall pass to MATEP upon the acceptance of the same by MATEP. Delivery shall be made when such materials arrive "Free On Board" carrier at the Site.

## ARTICLE 10.0   INDEMNIFICATION

### 10.1   MATEP's Indemnification Obligation

MATEP shall defend, indemnify and hold harmless Contractor, its Sub-Contractors, and their respective employees, agents, officers, partners and directors and anyone else acting for or on behalf of them, from and against all liabilities, claims, damages, losses and expenses (including reasonable attorneys' fees and court costs) for injury to or death of persons, including employees of MATEP, and for loss of or damage to the property of third parties to the extent arising out of or resulting from the negligent or intentional act or omission of MATEP or any person employed by MATEP (other than Contractor or any Subcontractor), or anyone for whom such party shall be liable in connection with activities under this Contract.

### 10.2   Contractor's Indemnification Obligation

Contractor shall defend, indemnify and hold harmless MATEP and its Affiliates, and their respective employees, agents, officers, partners and directors and anyone else acting for or on behalf of them, from and against all liabilities, claims, damages, losses, and expenses (including reasonable attorneys' fees and court costs) for injury to or death of persons, including Contractor's or subcontractor's employees, and for loss or damage to the property of third parties, to the extent arising out of or resulting from the negligent or intentional act or omission of Contractor or any

# Combustion Turbine Project

### Phase 3 Piping Systems Construction Contract

subcontractor or any person employed by any of them, or anyone for whose acts such person may be liable in connection with activities under this Contract.

**10.3**  **Tax Indemnity**

Contractor shall defend, indemnify and hold MATEP, its assigns and affiliates, harmless from and against all claims by any Governmental Unit claiming taxes based on income or profits of Contractor or any of its agents or employees with respect to any payment for the Work made to or earned by Contractor, or any of its or their respective agents or employees under this contract. MATEP shall defend, indemnify and hold Contractor, its assigns and Affiliates harmless from and against all claims by any Governmental Unit claiming taxes based on sales and use and other taxes on goods and services for which MATEP has agreed to be responsible as set forth in Article 2.4.

**10.4**  **No Indemnity Of Party At Fault**

Nothing contained herein shall obligate either Party to indemnify or hold harmless any Person from any claims or liabilities to the extent of the gross negligence, recklessness, willful misconduct or otherwise tortious conduct of the Party seeking indemnification.

**10.5**  **Conditions**

Each Party's obligations with respect to claims and suits covered by this Article 10 are subject to the conditions that (a) the indemnitee gives the indemnitor reasonably prompt Notice of any such claim or suit; (b) the indemnitee cooperates in the defense of any such claim or suit; and (c) the indemnitor has sole control of the defense and settlement of such claim or suit to the extent of the indemnitor's liability for any such claim or suit, provided that indemnitor shall confirm in writing its obligation to indemnify the indemnitee pursuant to this Article 10.0.

**10.6**  **Confidentiality**

Any information concerning the Parties which is designated in writing as "Proprietary" or "Confidential" and disclosed to the other Party incident to the performance of Work pursuant to this Contract is disclosed in confidence and the transferee shall not, for a period of five (5) years from the date of its receipt, publish or otherwise disclose it to others without the prior written approval of the transferor, which shall not be unreasonably withheld; provided, however, that nothing herein shall limit either Party's rights to disclose data which (a) was in such Party's possession prior to this Contract without restriction; (b) becomes available within the public domain without fault of the non-disclosing Party; or (c) is received by either Party from a third party without restriction and not in breach of this Contract, or notwithstanding the foregoing, (i) MATEP shall have the right to provide any information regarding or supplied by Contractor to any subcontractor as may be required in conjunction with any financing agreement; (ii) MATEP shall have the right to provide any information regarding or supplied by Contractor or any Sub Contractor to any Governmental Unit having jurisdiction (but MATEP shall promptly advise Contractor of any request for such information by such Persons and shall cooperate in giving Contractor an opportunity to present objections or requests for limitation to such Persons), (iii) MATEP shall have the right to provide such information to its affiliates and the other Con....

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

and (iv) Contractor shall have the right to provide to any Sub-Contractor any information necessary to complete the Work.

## ARTICLE 11. INTELLECTUAL PROPERTY RIGHTS

**11.1    Patent and License Rights**

Contractor further agrees to grant and hereby grants to MATEP and its Affiliates an irrevocable, paid-up, nonexclusive, perpetual license for the enjoyment and use under of all patents, intellectual property rights copyrights now owned or controlled by Contractor or its Sub-Contractors to the extent necessary for the operation and maintenance of the Equipment or component thereof.

## ARTICLE 12.0    ASSIGNMENT

**12.1    Assignment**

Neither party may assign this Contract or any rights or obligations hereunder without first obtaining the written consent of the other party, which consent shall not be unreasonably withheld in the case of an assignment solely for financing purposes or in the case of an assignment by Contractor to a subcontractor of limited items of Work.

## ARTICLE 13.0    DISPUTES

**13.1    Governing Law**

The laws of the Commonwealth of Massachusetts shall govern this Contract.

**13.2    Dispute Resolution**

The Parties shall attempt in good faith to resolve any dispute arising out of or relating to this Contract promptly by negotiations. Any party may give the other party written notice of any dispute not resolved in the normal course of business by the MATEP's Representative and the Contractor's Project Manager. Executives of both parties at levels one step above each Party representative shall meet at a mutually acceptable time and place within 10 days after delivery of such notice, and thereafter as often as they reasonably deem necessary, to exchange relevant information and to attempt to resolve the dispute. If these persons have not resolved the matter within 30 days of the disputing party's notice, or if the Parties fail to meet within 10 days, the parties shall be free to exercise any right or remedy in law or equity.

## ARTICLE 14.0    REPRESENTATIONS AND WARRANTIES

**14.1    By Contractor**

Contractor represents and warrants that:

### 14.1.1    Existence and Powers

Contractor is a corporation validly existing and in good standing under the laws of the Commonwealth of Massachusetts with full legal right, power and authority to enter into and to perform its obligations under this Contract.

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

### 14.1.2  Due Authorization and Binding Obligation

This Contract has been duly authorized, executed and delivered by all necessary corporate action of Contractor and constitutes a legal, valid and binding obligation of Contractor, enforceable against Contractor in accordance with its terms.

### 14.1.3  No Conflict

Neither the execution nor delivery by Contractor of this Contract, nor the performance by Contractor of its obligations in connection with the transactions contemplated hereby or the fulfillment by Contractor of the terms or conditions hereof, (i) conflicts with, violates or results in a material breach of any constitution, law or governmental regulation applicable to Contractor or (ii) conflicts with, violates or results in the material breach of any term or condition of any order, judgment or decree, or any contract, agreement or instrument, to which Contractor is a party or by which Contractor or any of its properties or assets are bound, or constitutes a material default under any of the foregoing.

### 14.1.4  Approvals

Contractor has obtained and is in compliance with all legal entitlements which Contractor is required to obtain hereunder and for the valid execution, delivery and performance by Contractor of this Agreement, and all such legal entitlements are in full force and effect.

### 14.1.5  No Litigation

There is no action, lawsuit or proceeding, at law or in equity, before or by any court, governmental or arbitral body, pending or, to the best of Contractor's knowledge, threatened against Contractor, in which an unfavorable decision, ruling or finding could reasonably be expected to have a material and adverse effect on the execution and delivery of this Contract by Contractor or on the ability of Contractor to perform its obligations hereunder.

## 14.2    By MATEP

### 14.2.1  Existence and Powers

MATEP is a corporation validly existing and in good standing under the laws of the Commonwealth of Massachusetts with full legal right, power and authority to enter into and to perform its obligations under this Contract.

### 14.2.2  Due Authorization and Binding Obligation

This Contract has been duly authorized, executed and delivered by all necessary partnership action of MATEP and constitutes a legal, valid and binding obligation of MATEP, enforceable against MATEP in accordance with its terms.

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

### 14.2.3 No Conflict

Neither the execution nor delivery by MATEP of this Contract, nor the performance by MATEP of its obligations in connection with the transactions contemplated hereby or the fulfillment by MATEP of the terms or conditions hereof, (i) conflicts with, violates or results in a material breach of any constitution, law or governmental regulation applicable to MATEP or (ii) conflicts with, violates or results in the material breach of any term or condition of any order, judgment or decree, or any contract, agreement or instrument, to which MATEP is a party or by which MATEP or any of its properties or assets are bound, or constitutes a material default under any of the foregoing.

### 14.2.4 Approvals

MATEP has obtained and is in compliance with all legal entitlements which MATEP is required to obtain hereunder and for the valid execution, delivery and performance by MATEP of this Contract, and all such legal entitlements are in full force and effect.

### 14.2.5 No Litigation

There is no action, lawsuit or proceeding, at law or in equity, before or by any court, governmental or arbitral body, pending or, to the best of MATEP's knowledge, threatened against MATEP, in which an unfavorable decision, ruling or finding could reasonably be expected to have a material and adverse effect on the execution and delivery of this Contract by MATEP or on the ability of MATEP to perform its obligations hereunder.

## ARTICLE 15.0   NOTICES/COMMUNICATIONS

### 15.1   Notices

Any Notice pursuant to the terms and conditions of this Contract shall be in writing and (a) (a) delivered personally; (b) sent by certified mail, return receipt requested; (c) sent by a recognized overnight mail or courier service with delivery receipt requested; or (d) sent by facsimile transfer and acknowledged by receipt.

If to Contractor:

    Frank Lill & Son, Inc
    656 Basket Road.
    Webster, NY 14580-9770

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

Attention: Mr. Gary L. Briscoe

**With a copy to:**

Frank Lill & Son, Inc
656 Basket Road.
Webster, NY 14580-9770
Attention: LEGAL DEPARTMENT

**If to MATEP:**

Medical Area Total Energy Plant, Inc.
474 Brookline Avenue
Boston, MA   02215
Attention: President

**With a copy to:**

Legal Department
NSTAR Electric and Gas Company
800 Boylston Street
Boston, MA   02199
Attention: Legal Department

**15.2    Effect of Notices**

Notices shall be effective when received by the addressed Party.

**15.3    Technical Communications**

Any technical or other communications pertaining to the Work shall be between the Contractor's Project Manager and MATEP's Representative or other representatives appointed by the Project Manager or the MATEP's Representative.  Each Party shall notify the other in writing of the name of such representatives.

## ARTICLE 16.0   MISCELLANEOUS

**16.1    Independent Contractor**

Contractor is an independent contractor, and nothing contained herein shall be construed as constituting any relationship with MATEP other than that of MATEP and independent contractor, nor shall it be construed as creating any relationship whatsoever between MATEP or MATEP's Representative and Contractor's employees.

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

**16.2**  **Effect of Invalid Provisions**

The invalidity or unenforceability of any portion or provision of this Contract shall not affect the validity or enforceability of any other portion or provision. Any invalid or unenforceable portion or provision shall be deemed severed from this Contract. The Parties shall negotiate an equitable adjustment in such portions or provisions of this Contract to effect the underlying purposes of this Contract.

**16.3**  **Order of Precedence**

In the event there is a conflict among provisions of this Contract, all provisions in the body of this Contract and Exhibit of Definitions shall take precedence over all other Exhibits.

**16.4**  **Survival**

The provisions of Articles 3.9, 3.11, 3.12, 3.13, 4, 6, 7, 9, 10, 11 and 13 (and to the extent any other Section hereof by it terms survives termination) shall survive the termination of this Contract.

**16.5**  **Entire Contract**

This Contract, including the Exhibits attached hereto, constitutes the entire agreement between the Parties with respect to the subject matter hereof and there are no oral or written understandings, representations or commitments of any kind, express or implied, which are not expressly set forth herein.

**16.6**  **Modification in Writing**

No oral or written modification of this Contract by any officer, agent or employee of Contractor or MATEP, either before or after execution of this Contract, shall be of any force or effect unless such modification is in writing or signed by the Party to be bound thereby.

**16.7**  **Continuing Obligations**

The waiver of any breach or failure to enforce any of the terms, covenants or conditions of this Contract shall not in any way affect, limit, modify or waive the future enforcement of such terms, covenants or conditions, any course of dealing or custom of the trade notwithstanding.

**16.8**  **Headings**

The headings contained herein are included solely for the convenience of the Parties and are not part of this Contract.

**16.9**  **Time of Performance**

The parties agree that time is of the essence with respect to the obligations set forth in the Milestone Schedule Dates, EXHIBIT B hereof but the foregoing shall not be construed to limit MATEP's obligation to make Milestone payments for Milestones achieved by Contractor.

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

**16.10**  **No Waiver**

The failure of MATEP or Contractor to insist upon a strict performance of any of the terms, conditions or details set forth in this Contract shall not constitute a waiver of any of the said terms, conditions or details, nor of any of the rights or remedies by MATEP.

## ARTICLE 17 LIMITATION OF LIABILITY

**17.1**    **General Limitations**

In no event shall Contractor or MATEP or their respective Contractors, contractors or affiliates be liable for special, indirect, incidental or consequential damages, whether in contract, warranty, tort, negligence, strict liability or otherwise, including but not limited to loss of profits or revenue, loss of use of the Equipment or any associated equipment, cost of capital, cost of substitute equipment, facilities or services, downtime costs, delays, and claims of customers of either party or third parties for any damages. Each Party's liability for any claim whether in contract, warranty, tort, negligence, strict liability or otherwise for any loss or damage arising out of, connected with or resulting from this Contract or the performance or breach thereof, or from the design, manufacture, sale, delivery, resale, repair, replacement, installation, technical direction of installation, inspection, operation or use of any Equipment or from any services rendered in connection therewith shall not exceed the Contract Price. The foregoing limitations shall not apply to claims for personal injury (including death) or third party property damage to the extent the same are covered by the insurance coverage specified in Article 8 of this Contract.

**IN WITNESS WHEREOF,** the Parties have caused this Contract to be executed and delivered as of the date and the year first above written.

MEDICAL AREA TOTAL ENERGY PLANT, INC.
By:

Name:  Anthony J. Ragucci
Title:   Vice President & General Manager

**Frank Lill & Son, Inc**
By:

Name:  _____ A. Chard
Title:   Executive Vice President            6/2/03

Page 22 of 36 pages

April 12, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

# ATTACHMENTS

## DEFINITIONS

The singular shall include the plural, and the masculine shall include the feminine, as the context requires. "Includes" or "including" shall mean "including, but not limited to." Any reference to a contract or agreement shall also mean the amended, supplemented or modified versions of each contract or agreement, unless otherwise noted.

### Affiliate

Any Person, which directly or indirectly controls or is under common control with a Party. For the purposes of this definition, "control" (including with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to a Party, means the power to direct or cause the direction of the management and policies of such Party, directly or indirectly, whether through the ownership of voting securities or by contract or otherwise.

### Business Day

Any day, excluding Saturday, Sunday or legal holiday, in the jurisdiction where the Facility is located

### Change

See Section 4.1 hereof.

### Change Order

A written agreement between the Parties pursuant to Section 4.4

### Contract

This Agreement including all Exhibits

### Contract Price

The price for the Work as provided in Article 5 hereof, as adjusted pursuant to the terms of this Contract.

### Contractor Event of Default

See Section 7.1.

### Day

In the event that an obligation to be performed hereunder falls due on a Saturday, Sunday, or legal holiday in the jurisdiction where the Facility is located, the obligation shall be required to be performed on the next Day that is not a Saturday, Sunday or legal holiday.

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

## Delay Damages

See Section 3.12 of this Agreement.

## Governmental Rule

Any statute, law, regulation, ordinance, rule, judgment, order, decree, directive, mandatory guideline or policy, or any similar form of decision of or determination by, or any interpretation or administration of any of the foregoing by any Governmental Unit.

## Governmental Unit

Any Federal, state or local government, any political subdivision or any governmental, quasi-governmental, judicial, public or statutory instrumentality, administrative agency, authority, body or other entity having jurisdiction over the Work.

## Hazardous Wastes or Materials

Any hazardous, toxic, or polluting substance, material, waste, or contaminant as defined or regulated pursuant to Governmental Rules applicable to the Work, the Facility, or the Facility Site, or off site rights of way and easements required for the Work as such Governmental Rules may be amended from time to time, including: the Comprehensive Environmental Response, Compensation, and Liability Act (42 U.S.C. § 9601 et seq.); the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.); the Toxic Substances Control Act (15 U.S.C. § 2601 et seq.); or any provisions of applicable State statute or regulation corresponding or similar to any of the Federal statutes listed above.

## Liquidated Damages

Those amounts specified in Section 3.11.1 of the Contract

## Milestone Schedule

See Exhibit B hereto.

## Party or Parties

MATEP or Contractor, or both

## Payment Date

See Section 6.1 hereof.

## Person

Any individual, corporation, voluntary association, partnership, incorporated organization, unincorporated organization or Government Unit.

## Project Manager

The Project Manager designated by Contractor pursuant to Section 3.7 hereof.

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

## Reasonable Efforts

With respect to any Person, the level of effort that is commercially and technically reasonable.

## Subcontractor

Any Person (including an Affiliate of Contractor) with whom Contractor has entered into any subcontract, purchase order, or other agreement for such Person to perform any part of the Work or to provide any materials, equipment or supplies on behalf of Contractor (including any Person at any tier with whom any Subcontractor has further subcontracted any part of the Work).

## Warranty Period

See Article 4 hereof.

## Work

The supply of the Equipment and the associated facilities and services provided by Contractor

## Work Scope

Exhibit A to this Contract, as it may be adjusted pursuant to this Contract.

## Exhibit A. Change Order Procedure  (1 page)

Has been enclosed.

## Exhibit B. Milestone Schedule Dates & Values  (1 page)

As negotiated and agreed to by both parties, has been attached herein

## Exhibit C. Work Scope  (3 Sections)

Is defined by the Bid Package Contents sheet for the Phase 3 Piping Systems, all of the Bid Addenda and the Contractor's Bid Clarifications which were part of the issued and bidding process and have been attached herein.

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

**Exhibit A.**        <u>**Change Order Procedure**</u>        **Page 1 of 1 pages**

# Contract Change Order (CCO) Procedure

1.1 AES, without invalidating the Contract, may order changes in the Contract Work Scope consisting of additions, deletions or modifications. The Contract's Work Scope, Price, Work Schedule and the Payment Schedule shall be adjusted accordingly. A Contract Change Order in the manner described as follows shall authorize all such changes in the Work Scope.

1.2 A Contractor may request a Contract Change Order by submitting a written request to AES, which describes the proposed change. Should AES agree to the requested change, then AES will issue a written Contract Change Order to the Contractor. However, if AES does not issue a written Change Order then the requested Contract Change is not accepted, shall not be performed and AES shall not be responsible for any costs associated therewith. The Contractor's request must include all the submission requirements listed in paragraphs 1.4 and 1.5.

1.3 AES shall submit a written Contract Change Order Request (COR) to the Contractor, which describes the proposed change.

1.4 The Contractor must submit to AES, within five days from receipt of the COR, the impact of the COR on Contract Price and Work Schedule. Contractor's submission shall include sufficient supporting data on cost and schedule impacts to enable AES to verify the reasonableness of the proposal. Proposed impacts on cost or schedule must include equipment, material and services provided to the contractor by subcontractors.

1.5 AES will review the submitted proposal to verify its reasonableness and request when determined as necessary additional clarification. The Contractor shall provide to AES all records requested, which may support any aspects of the submission.

1.6 A Change Order will become binding upon the parties upon mutual agreement and written acceptance by AES. However, not withstanding the failure of the parties to agree on the submitted proposal, AES at its sole discretion may direct in writing that a Contractor proceed on a Change Order. The disputed proposal shall continue to be resolved by the parties in accordance with paragraphs 1.4 and 1.5 during progress of the work. If agreement cannot be reached, then AES will pay the Contractor 75% of the disputed Proposal Cost in accordance with the Revised Contract Payment Schedule. During the progress of the Contractor's Work, the parties will continue to attempt resolution of the disputed Change Order. If agreement can not be reached, then the terms of the Contract pertaining to dispute resolution may be invoked.

1.7 Contractor shall not perform any work related to a COR unless AES directs in writing or is expressly directed by an AES representative in writing to proceed with a Change Order prior to its written issuance.

1.8 Revisions to the terms and conditions of an issued Change Order will be made only by issuance of another Change Order.

1.9 After the parties have accepted the proposed terms and conditions applicable to a pending Change Order, the Contract's Work Scope, Price, Work Schedule and Payment Schedule shall be adjusted accordingly and reflected in the issued Contract Change Order.

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

## Exhibit B.    <u>Milestone Schedule Dates</u>                (Page 1 of 1 Pages)

1. <u>Submit bid for Phase 3 Piping Installation</u> ............................................... 3/13

2. Award contract for Phase 3 PPG installation ....................................3/21

3. <u>Contractor Mobilization</u> ...........................................................................3/24

- Complete rework and installation of ERI supplied piping.................4/6
- Complete hydrotest of HRSG Boilers Assembly..........................4/8
- Complete installation of Turbine Vents & Drain..........................4/16
- Complete installation of Turbine Lube Oil System.......................4/26
- Complete installation of HPS System.........................................4/29
- Complete installation of Boiler Feed Water System .....................4/29
- Complete installation of Fuel Oil System...................................4/29
- Complete installation of Vents, Drains and Blow Down piping...........4/29
- Complete installation of Demineralized Water System....................4/29
- Complete installation of Safety Vent Piping ...............................4/29
- Complete installation of Compressed Air header...........................4/29
- Complete installation of Chemical Feed System...........................5/3
- Complete installation of Cooling Water System...........................5/6
- Complete installation of Steam Blow Piping ...............................5/2
- Complete removal of Steam Blow Piping ....................................5/2
- Complete installation of Low Pressure Gas System.......................5/15
- Complete installation of High Pressure Gas System.......................5/15 
- Complete installation of Urea/Ammonia System...........................5/17
- Complete installation of Glycol Cooling System ..........................6/17

Note: "Complete installation" includes completion of all activities defined in a system's work scope (i.e.: permanent hanger installation, insulation, finished painting, etc.).

The integration of the Distributed Damages Clause B.11 into this contract makes consequential for Engineered Parts... Milestone Dates are not met and the aggregate of the days assessed as damages shall not exceed 10% of the contract.

April 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

**Exhibit C.**     <u>**Work Scope Documents**</u>     **(Page 1A of 4A pages)**

## BID PACKAGE CONTENTS

For:

## MATEP COGENERATION UPGRADE PROJECT

On behalf of MATEP, Advanced Energy Systems Management Company, Inc. (AES) is pleased to invite you to bid on the <u>**Phase 3 Piping Systems**</u>, which is fully defined in the Bid Package Documents listed below.

The following documents comprise this Bid Scope;

- Instructions to Bidders; Spec # 1010 Rev A
- Work Scope; Spec # 1015 Rev A                                        (5 pages)
- General Bid Form; Spec # 1020, Rev A                                 (17 page)
- Milestone Schedule Dates; Spec # 1025, Rev A                         (4 pages)
- Corporate Bidder's Certification Form                                (1 page)
- Proposed Contract Draft;                                             (1 page)
- AES / MATEP Safety & Environmental Contract Addendum                 (29 pages)
- AES CTP RFI Form                                                     (8 pages)
                                                                       (1 page)

- <u>Tri-Mont Engineering Drawings:</u>
    - D-096-13-T2, Rev 0, 1 Sht, Title Sheet
    - D-096-13-F1, Rev 1, 1 Sht, Process Diagram Piping Symbols
    - D-096-13-F2A, Rev 3, 1 Sht, Existing Main Headers A&B, P&ID
    - D-096-13-F2B, Rev 3, 1 Sht, New HRSG Steam Header, P&ID
    - D-096-13-F2C, Rev 1, 1 Sht, New HRSG Steam Header, P&ID
    - D-096-13-F3B, Rev 2, 1 Sht, HRSG Vents & Drains, P&ID
    - D-096-13-F4A, Rev 0, HRSG Vents & Drains (Sheet 1), P&ID
    - D-096-13-F4B, Rev 0, HRSG Vents & Drains (Sheet 2), P&ID
    - D-096-13-F5A, Rev 0, HRSG Vents & Drains (Sheet 1), P&ID
    - D-096-13-F5B, Rev 0, HRSG Vents & Drains (Sheet 2), P&ID
    - D-096-13-F6, Rev 0, Miscellaneous Utilities, P&ID
    - D-096-13-F7, Rev 0, Boiler Chemical Feed System, P&ID
    - D-096-13-M1, Rev 1, 1 Sht, Phase 1, HRSG Feedwater & Steam Tie Ins
    - D-096-13-M4, Rev 3, 1 Sht, Phase 2, HRSG Feedwater & Steam, Piping Plan El. 37'-0"
    - D-096-13-M5, Rev 3, 1 Sht Phase 2, HRSG Feedwater & Steam, Piping Plan El. 37'-0"
    - D-096-13-M9, Rev 3, 1 Sht Phase 2/3 HRSG Feedwater & Steam, Piping Plan El 33'-0"
    - D-096-13-M10 Rev 0, 1 Sht Phase 2/3, HRSG Feedwater & Steam, Piping Plan El 33'-0"
    - D-096-13-M11 Rev 0, 1 Sht Phase 3, HRSG Feedwater & Steam, Piping Plan El 33'-0"
    - D-096-13-M12 Rev 0, 1 Sht Phase 3, HRSG Feedwater & Steam, Piping Plan El 33'-0"
    - D-096-13-M13 Rev 0, 1 Sht Phase 3, HRSG Feedwater & Steam, Section A-A
    - D-096-13-M14 Rev 0, 1 Sht Phase 3, HRSG Feedwater & Steam, Section B-B
    - D-096-13-M15 Rev 0, 1 Sht Phase 3, HRSG Feedwater & Steam, Section D-D
    - D-096-13-M16 Rev 1, Phase 3, Miscellaneous Utilities Plan @ El 15'-0"
    - D-096-13-M17 Rev 1, Phase 3, Miscellaneous Utilities Plan @ El 15'-0"
    - D-096-13-M18, Rev 1, Phase 3, Miscellaneous Utilities Plan @ El 33'-0" & 37'-0"
    - D-096-13-M19, Rev 0, Phase 3, Miscellaneous Utilities Demolition & Tie-in details
    - D-096-13-M20-SHT.1, HRSG Feedwater & Steam, Desuperheater Liner Details
    - D-096-13-M20-SHT.2C, HRSG Feedwater & Steam, Pipe Supports, Index
    - D-096-13-M20-SHT.10 HRSG Feedwater & Steam, Pipe Supports, General Details
    - D-096-13-M20-SHT.10 HRSG Feedwater & Steam, Pipe Supports, H50 – H56

Aprv P3003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

Exhibit C.    <u>Work Scope Documents</u>    (Page 2A of 4A pages)

D-096-13-M20-SHT.11 HRSG Feedwater & Steam, Pipe Supports, H57– H63
D-096-13-M20-SHT.12 HRSG Feedwater & Steam, Pipe Supports, H64 – H70
D-096-13-M20-SHT.13 HRSG Feedwater & Steam, Pipe Supports, H71 – H77
D-096-13-M20-SHT.14 HRSG Feedwater & Steam, Pipe Supports, H78 – H84
D-096-13-M20-SHT.15 HRSG Feedwater & Steam, Pipe Supports, H85 – H91
D-096-13-M20-SHT.16 HRSG Feedwater & Steam, Pipe Supports, H91 – H93
D-096-13-M22, Rev 0, 1 Sht, HRSG Feedwater & Steam, Auxiliary Steel
D-096-13-M23, Rev 0, Phase 3 Steam Blow Piping Plan
D-096-13-M24, Rev 0, Phase 3 Steam Blow Piping Details
D-096-13-MSK1, Rev 1, Floor Penetration (By Others)
D-096-13-MSK2, Rev 1, Roof Penetration (By Others)

- <u>Careba Power Engineers Drawings</u>:

| | | |
|---|---|---|
| CPE-G-100 | A | Legend |
| CPE-G-101 | C | Equipment Arrangement Plan 15' El |
| CPE-G-102 | B | Equipment Arrangement Plan 33' & 37' El |
| CPE-G-104 | B | Equipment Arrangement Plans & Sections 82', 88'-4" & 93' |
| CPE-M-107 | 1 | Piping Plan, Area IV, 15' El |
| CPE-M-108 | D | Piping Plan Area V Plan, 15' El |
| CPE-M-109 | B | Piping Plan Area V, 15' El to 20' El |
| CPE-M-113 | B | Piping Plan Area IV Plan, 37' El |
| CPE-M-114 | C | Piping Plan Area V Plan, 37' El |
| CPE-M-123 | D | Piping Plan Area IV Plan, 15' El |
| CPE-M-304 | 1 | Piping Part Plan and Sections, El 64' & 82' |
| CPE-M-306 | B | Piping Urea Ammonia Part Plans and Sections |
| CPE-M-310 | C | Piping Part Plan and Sections, Fuel Gas |
| CPE-I-101 | B | P&ID CTG-100 Utilities |
| CPE-I-102 | B | P&ID CTG-200 Utilities |
| CPE-I-107 | B | P&ID LP Fuel Gas System |
| CPE-I-108 | B | P&ID HP Fuel Gas System |
| CPE-I-110 | 2 | P&ID CTG Cooling Water System |
| CPE-I-111 | 2 | P&ID Glycol Cooling |
| CPE-I-112 | 1 | P&ID Ammonia Delivery System |
| CPE-I-114 | C | P&ID Fuel Oil System |

- <u>Careba Power Engineers Specifications</u>:

| | | |
|---|---|---|
| 0252506-15060 | A | Piping Material Specification |
| 0252506-15090 | B | Piping Insulation Specification |
| 0252506-15102 | B | Specification for Cast and Forged Steel Valves Large Bore |
| 0252506-15103 | B | Specification for Butterfly and Wafer Check Valves |
| 0252506-15104 | B | Specification for Cast and Ductile Iron Valves |
| 0252506-09901 | A | Specification for Pipe Coatings – Low Energy Systems |
| | A | Piping Line List |
| | A | Large Bore Valve List |
| | A | Small Bore Valve List |

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

**Exhibit C.**    <u>**Work Scope Documents**</u>    **(Page 3A of 4A pages)**

- <u>Vanderweil Engineers Specifications:</u>

| | | |
|---|---|---|
| 15010 | 0 | Basic Mechanical Requirements Specification |
| 15110 | 3 | Piping Material Class Sheets |
| 5115 | 1 | Specification for Mechanical Insulation |
| 15150 | 2 | Specification for Piping Accessories |
| 15075 | 0 | Specification for Mechanical Identification |

## Vendor Drawings

- **ALSTOM – Turbine**

B01/001, shts 1 - 4, 8-11 Rev C, General Arrangement Turbine Package
C01/001, Rev C, 7/9/2002 Schematic(Mechanical) Symbols & Designations
C01/020, Rev C, 7/9/2002 Cyclone(Twin Shaft) Hydraulic Start System
C01/030, Rev C, 7/9/2002 Cyclone(Twin Shaft) DLE Gas system
C01/040, Shts 1-2, Rev C, 7/9/2002 Cyclone(Twin Shaft) DLE Liquid Fuel system
C01/050, Rev C, 7/9/2002 Cyclone(Twin Shaft) Lube Oil system
C01/055, Rev C, 7/9/2002 Cyclone(Twin Shaft) Piping & Instrumentation Diagram
C01/060, Rev C, 7/9/2002 Cyclone(Twin Shaft) High Pressure Cleaning system
C01/080, Rev C, 7/9/2002 Cyclone(Twin Shaft) Turbine Combustion Air & Vent system
C01/090, Rev C, 7/9/2002 Cyclone(Twin Shaft) Fire & Gas Extinguishing System

- **ERI – HRSG**

504-8033, Rev 1, 10/7/2002 Piping, Saturated Steam Series: S4-4412
504-8034, Shts.1-2, Rev 1, 10/7/2002 Piping, Feedwater Series: S4-4412
504-8035, Shts. 1-3, Rev 2, 9/30/2002 Piping, Boiler Trim Series: S4-4412
504-8040, Rev 0, 8/6/2002 Piping, SH to SH Series: S4-4412
504-8091, Rev 0, 10/3/2002 Piping, Lower Drum Crossover Series: S4-4412  Sheet 3",
722-3280, Rev 0, 11/18/2002 General Arrangement S4-4412_SH/Econ shts. 1-3,
B/M 3253-30, Rev 0, HRSG Trim List & Engineering Notes,

- **COEN – Duct Burner**

D: 0185-CC-156, Rev B, COEN Piping Module Arrangement 4 Elements HRSG Duct Burner
D: 0210-CC-123, Rev E, COEN Gen Arrangement 3 Elements HRSG Duct Burner
D: 0501-CC-326, Rev C, COEN Process & Instrumentation Diagram 3 Elements HRSG Duct

- **Peerless MFG**

D0010100, Rev 1, 9/27/2002 P&ID Legend
D0010101, Rev 2, 11/27/2002 P&ID
D0010102, Rev 2, 11/26/2002 P&ID
D0010103, Rev 3, 11/26/2002 P&ID
D2010201, Rev 2, 1/14/2003 Fan & Heater Skid - General Arrangement
D2020201, Rev 1, 10/23/2002 Ammonia Injection Grid GA

April 1, 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

**Exhibit C.**     **Work Scope Documents**     **(Page 4A of 4A pages)**

D2030201, Rev 5, 1/24/2003 Manifold Piping - General Arrangement

- **Peerless / Fuel Tech**

530P-M5-1, Rev 3, 11/2/2002 Decomposition Chamber General Arrangement and Notes
530P-M5-2, Rev 2, 10/25/2002 Decomposition Chamber Sections and Details
530P-M5-3, Rev 2, 10/25/2002 Decomposition Chamber Sections and Details
530P-M4, Rev 0, 9/14/2002 Multi-Nozzle
530P-M3, Rev 1, 11/1/2002 Metering Skid Fabrication Drawing
530P-M6, Rev 1,11/2/2002 Bill of Material

- **Toromont FGC**

22675-099 (1 of 1), Rev 1, 12/18/2002 P&ID Project Overview Notes & Information
22675-100 (1 of 1), Rev 1, 12/18/2002 P&ID Diagram Fire & Gas Safety systems
22675-101, shts 1-3, Rev 1, 12/18/2002 P&ID Fuel gas Compressor Module
22675-199 (1 of 1), Rev 0, 12/18/2002 P&ID Legends & Symbols
22675-201, shts 1-4, Rev 1, 11/8/2002 Package Layout
22675-251, shts 1-2, Rev 0, 11/11/2002 Package Layout - Exterior

April 11 2003
Revision 3

# Combustion Turbine Project
## Phase 3 Piping Systems Construction Contract

**Exhibit C.**          <u>Work Scope Addendum</u>   (Page 1B of 4B pages)

### Addenda #01. Issued on 2/26/03

1.  The work scope of Phase 3 Piping shall be performed on a basis of two shifts (1st & second). The work hours and days (5 @ 8; 5 @ 10; 6 @ 8, 6 @ 10, 6 @ 12; etc.) are to be determined by the contractor in order to meet the milestone schedule dates. A bar chart schedule for each milestone date shall be supplied with the contractor's bid, which denotes the number of men and the number of work week hours required to complete the work scope by that date.

2.  MATEP wants to emphasize some of the key elements and changes in the contract terms and conditions that are required to be addressed in the issued contract,
    *   <u>Liquidated Damages</u>: Page 9, Paragraph 3.11.1, *will be $1,000.00 per day instead of the $700.00 currently stated in the proposed contract. This clause will not be waived.*
    *   <u>Performance Bond</u>: Page 9, Paragraph 3.13.1, cost of bond to be quoted separate from Work scope price (reference Bid Form).
    *   <u>Insurance Coverage Amounts</u>: Page 14, Paragraph 8.1
    *   <u>Fabrication of piping;</u> larger than 2" must be done offsite, only field welding of spools will be acceptable onsite

3.  Document AES 1025, Milestone Schedule Dates is attached and is now a part of the bid package documents, which compose the contract work scope.

4.  The following drawings and documents, issued at the prebid meeting, have either been revised or issued by the engineers and will become a part of the bid package documents, which compose the contract work scope.

| | | |
|---|---|---|
| CPE-I-112 | P&ID Ammonia Delivery System | Added expansion joints. |
| CPE-M-108 | Piping Area V Plan. El. 15'-0" | |
| CPE-M-109 | Piping Area V Plan, El. 15'-0" (15' el to 25'el) | Revised FO, LO, added pipe support locations, added pipe support locations |
| CPE-M-113 | Piping Area IV Plan, El. 37'-0" | |
| CPE-M-114 | Piping Area V Plan, El. 37'-0" | Relocated bypass VB-1221, deleted valve VB-1224, added expansion joints |
| CPE-M-123 | Piping Area VI Plan, El. 94'-0" (Fuel Gas Compressor) | Added pipe support locations |
| CPE-M-306 | Piping - Urea – Ammonia Part Plan and Sections | Added pipe support locations |
| CPE-M-307 | Piping - Sections Roof El. 82'-0", 88'-4", 93'-4 1/2" | Relocated bypass VB-1221, deleted valve VB-1207, added expansion joints |
| CPE-M-310 | Piping - Fuel Gas Plans & Sections | New Sheet |
| CPE-M-501 | Pipe Support Details Sheet 1 | Added pipe support locations, New sheet |

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

**Exhibit C.**              <u>**Work Scope Addendum**</u>                **(Page 2B of 4B pages)**

| | | |
|---|---|---|
| CPE-M-502 | Pipe Support Details Sheet 2 | New Sheet |
| CPE-M-503 | Pipe Support Details Sheet 3 | New Sheet |
| CPE-M-504 | Pipe Support Details Sheet 4 | New Sheet |
| CPE-M-505 | Pipe Support Details Sheet 5 | New Sheet |
| CPE-M-506 | Pipe Support Details Sheet 6 | New Sheet |
| CPE-M-507 | Pipe Support Details Sheet 7 | New Sheet |
| CPE-M-508 | Pipe Support Details Sheet 8 | New Sheet |
| CPE-M-509 | Pipe Support Details Sheet 9 | New Sheet |
| CPE-M-510 | Pipe Support Details Sheet 10 | New Sheet |
| CPE-MSK-CTG-02 | CTG Drain Pit Locations | New Sheet |

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

**Exhibit C.**               <u>**Work Scope Addendum**</u>               **(Page 3B of 4B pages)**

**Addenda #02    Issued on 03/05/03**

## SUBJECT: PMC AND FUEL OIL VALVES

Affected Documents

| CPE-I-114 | P&ID Fuel Oil System |
| | Piping Material Class Sheets |

A bidder to the Phase 3 Piping package forwarded the following questions:

| Item | Question | Response |
|------|----------|----------|
| 1B | It appears as though we do not have specifications for PP1 or SS, please forward them to us. | PP1 is not applicable for this project as there are no refrigeration vents. Pipe class SS1 will be used in place of the noted, generic SS. |
| 2B | For specification SS-5, on the valve list, it calls for a plug valve, but no plug valve exists in the SS-5 specification. What valve do we utilize? | For your bid please use the specified ball valves called out in SS5. The dwg will be modified to suit |

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

**Exhibit C.**          <u>**Work Scope Addendum**</u>          **(Page 4B of 4B pages)**

**Addenda #03     Issued on 03/07/03**

## SUBJECT: EXTENSION OF BID PACKAGE DUE DATE & TIME

At the request of bidders the Bid Due Date and Time has been changed from March 7, 2003 at 12 Noon <u>to March 13, 2003 at 4PM</u>.

The AES 1020 & AES 1025 forms have also been revised in conjunction with the change in the Bid Due Date. Please ensure these revised forms replace the original ones in your bid package documentation so they are the basis of your bid.

These bid documents, Addenda #3, AES 1020 & AES 1025, are being sent to the bidders as email attachments.

All other terms and documents of the bid package remain unchanged by this addenda.

Any questions regarding the above should be addressed to:

Jack Fulkerson
Phone: 617-598-2790
Email: <u>jack_fulkerson@matep.com</u>

Tony Iosue
Phone: 617.598.2313
e-mail: Tony_Iosue@matep.com

April 1, 2003
Revision 3

# Combustion Turbine Project
### Phase 3 Piping Systems Construction Contract

Exhibit C.  **Work Scope Clarifications**  (Page 1C of 1C pages)

The contractor's bid scope clarifications excluded only the following work:

- Roof openings and flashings
- Floor (concrete) penetrations
- Paint
- Material for liner for Desuperheater spools
- Plant / Instrument Air
- Lube oil flushing
- Equipment startup / testing

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Frank Lill & Son, Inc.

**DEFENDANTS**

Medical Area Total Energy Plant, Inc.

**(b)** County of Residence of First Listed Plaintiff    Monroe, NY
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Suffolk, MA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Domestico, Lane & McNamara, LLP, 161 Worcester Rd., Framingham, MA, 01701, (508) 626-9000

Attorneys (If Known)

05 · 10122 RGS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL INJURY** ☐ 362 Personal Injury - Med. Malpractice | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 365 Personal Injury - Product Liability | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 640 R.R. & Truck | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 650 Airline Regs. | **LABOR** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 660 Occupational Safety/Health | ☐ 710 Fair Labor Standards Act | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 690 Other | ☐ 720 Labor/Mgmt. Relations | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | **PERSONAL PROPERTY** ☐ 370 Other Fraud | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | **SOCIAL SECURITY** |
| **REAL PROPERTY** | ☐ 371 Truth in Lending | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) |
| ☐ 210 Land Condemnation | ☐ 380 Other Personal Property Damage | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) |
| ☐ 220 Foreclosure | ☐ 385 Property Damage Product Liability | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 230 Rent Lease & Ejectment | **CIVIL RIGHTS** | | | ☐ 864 SSID Title XVI |
| ☐ 240 Torts to Land | ☐ 441 Voting | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) |
| ☐ 245 Tort Product Liability | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** |
| ☐ 290 All Other Real Property | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 444 Welfare | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 890 Other Statutory Actions |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | ☐ 891 Agricultural Acts |
| | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | ☐ 892 Economic Stabilization Act |
| | | ☐ 555 Prison Condition | | ☐ 893 Environmental Matters |
| | | | | ☐ 894 Energy Allocation Act |
| | | | | ☐ 895 Freedom of Information Act |
| | | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332

Brief description of cause:
Construction Contract Dispute

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Over $1,189,754.84

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE  01/18/2005

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Frank Lill & Son, Inc. v. Medical Area Total Energy Plant, Inc.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

☐ I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

☐ II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
        740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

☑ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
        315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
        380, 385, 450, 891.

☐ IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
        690, 810, 861-865, 870, 871, 875, 900.

☐ V.    150, 152, 153.

*Also complete AO 120 or AO 121
for patent, trademark or copyright cases

**05 · 10122 RGS**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

N/A

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)          YES ☐    NO ☑

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?          YES ☐    NO ☑

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?          YES ☐    NO ☐

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).          YES ☑    NO ☐

   A.   If yes, in which division do all of the non-governmental parties reside?

        Eastern Division ☑          Central Division ☐          Western Division ☐

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

        Eastern Division ☐          Central Division ☐          Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)          YES ☐    NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Leonard D. Zamansky

ADDRESS  Domestico, Lane & McNamara, LLP, 161 Worcester Road, Framingham, MA 01701

TELEPHONE NO.  (508) 626-9000

(Coversheetlocal.wpd - 10/17/02)